**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:10-cr-000169-JEO |
| | ) | |
| ROBERT O. HYDE, JR. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the defendant's challenges to Count Two (refusal to submit to a test) and to any improper tag charge (doc. 8) and his motion to dismiss Count Nine (doc. 12) of the information.[1]  Also, before the court is the necessity for a final determination on the merits of his guilt or innocence on the remaining counts following a non-jury trial before the undersigned.  Upon consideration, the court finds that the defendant's challenges to Count Two and the tag-related counts (Counts Eight and Nine) and his motion to dismiss Count Nine are due to be denied.  Additionally, the court finds the defendant guilty on Counts Two, Three, Four, Five, Six, Eight and Nine and not guilty on Counts One and Ten.

### BACKGROUND

### Procedural Matters

On May 19, 2010, the defendant was charged in an information following his arrest on January 18, 2010.  He was charged with nine violations of federal law, including driving under the influence (36 C.F.R. § 4.23(a)(1)) (Count One), refusal to submit to a test to determine his blood alcohol content (36 C.F.R. § 4.23(c)(1) & (2)) (Count Two), speeding (36 C.F.R. § 4.21(c)) (Count Three), having an open container in the motor vehicle (36 C.F.R. § 4.14(b)) (Count Four), possession of a loaded weapon (36 C.F.R. § 2.4(b)) (Count Five), interfering with

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court.

an agency function by providing false information (36 C.F.R. § 2.32(a)(4)) (Count Six), possession of a controlled substance (36 C.F.R. § 2.35(b)(2)) (Count Seven), an improper tag (36 C.F.R. § 4.2 and Ala. Code § 32-6-51)) (Count Eight), and an altered tag (36 C.F.R. § 40-12-265(a)) (Count Nine), and presence in a park area while under the influence of alcohol or a controlled substance (36 C.F.R. 2.35(c)) (Count Ten).

On June 1, 2010, the defendant's counsel filed a motion to suppress any evidence seized as a result of the stop of the defendant's vehicle (doc. 5) and a motion for a suppression hearing, but to continue the trial (doc. 3). The motion to continue was premised, *inter alia*, on the addition of the two charges in the information by the United States. (*Id*. at ¶ 3). The court found that the addition of two new charges in the information warranted a severance of the new counts from the prior offenses, but did not justify a continuance of the trial of the remaining counts. The court severed Counts Nine and Ten for a separate trial and affirmed the June 3, 2010, trial date.

Trial took place as scheduled. The court initially heard the defendant's motion to suppress and denied the same. The testimony on the motion to suppress was "brought forward" for purposes of the trial and the remaining witnesses were presented. The matter is now before the court for decision on the motions challenging the legal efficacy of certain counts and for a determination of guilt or innocence on each charge. The issues have been fully briefed by the parties.

### The Facts[2]

During the evening hours of January 18, 2010, United States Park Service Ranger

---

[2]To assist the reader in assessing the court's determinations of the pending motions and its assessment of the defendant's guilt or innocence, a limited recitation of the facts will be helpful. It, however, is not intended as a complete statement of all the facts.

Anthony Franks was patrolling on the Natchez Trace Parkway in Colbert County, Alabama.  He observed the defendant's BMW traveling toward him exceeding the posted speed limit.[3]  When the vehicle passed him, he turned around and followed the defendant.  He activated his "blue lights."  The defendant pulled to the side of the road without undue delay.  Franks called the tag in to the dispatcher, but had difficulty doing so because the tag was obstructed.  (Gov. Ex. 1 [4]).[5]

The defendant got out of his vehicle and Franks approached the defendant.  They conversed.  When Franks asked the defendant for identification, he presented his Tennessee driver's license from a leather case containing what appeared to be a Shelby County, Tennessee Deputy Sheriff's badge, a "Special Deputy" card, and other items.  Upon being asked, the defendant stated that he was "an active officer" with the Shelby County Sheriff's Department. Franks noted the smell of alcohol on the defendant's breath.  When asked about the smell, the defendant denied that he had been drinking.  He stated that he had been deer hunting.  Franks asked the defendant about taking a portable breathalyser test.   Franks went to the patrol car to get the handheld intoximeter.  About that time, the defendant went to the passenger side of the vehicle and leaned inside.  He also made a telephone call to someone.  When Franks returned, the defendant told him that he was talking to his attorney and that the attorney told him not to take the test.  Franks later determined, and the evidence at the hearing showed, that the defendant did

---

[3]The defendant does not challenge the testimony of Ranger Franks that he was exceeding the posted speed limit.  The original ticket alleges that he was going 73 in a 50 mile per hour zone.  The court finds the evidence sufficient to support a conviction under Count Three for speeding.

[4]References herein to "Gov. Ex. ___" are to the Government's exhibits offered at the trial of his matter.

[5]Government Exhibit 1 is the digital video of the stop from the patrol car's video system.

not talk with his lawyer, but was, in fact, talking with a friend.[6]

The defendant refused to participate in the breathalyser test. Franks instructed him to participate in three field sobriety tests. According to Franks, the defendant failed the tests and was placed under arrest for driving under the influence. Franks called for a wrecker to take the defendant's car. He also allowed the defendant to make arrangements to have his son picked up by Kehoe.

Franks examined the vehicle at the scene. He noted that the center console had a cup on it. (Gov. Ex. 17). The contents of the cup had been dumped. He smelled the odor of alcohol emanating from the cup.[7] Also found in the vehicle that evening were various weapons and ammunition.[8] The vehicle was towed to an impound location controlled by the tow truck operator, Ron Terry. It was stored inside a shelter at that location. Terry testified that the vehicle was locked in the garage and access to the same was limited. He also stated that he smelled alcohol while he was at the scene. As he put it, "it [(the smell)] was there."

Ranger Franks went to the impound lot the next morning to inventory the contents of the car. While doing so, he observed various pills in a container in the occupant area of the car.[9] (Gov. Ex. 18). He also recovered various bottles of alcohol in the trunk. Some of the bottles had

---

[6]The testimony showed that the friend, Cullen Kehoe, had been with the defendant earlier in the day. He is also the person who later arrived to take the defendant's son after he was arrested.

[7]The defendant generally challenges the sufficiency of this evidence to support the charge. The court, however, finds the testimony of Officer Franks sufficient to support a finding of guilt as to Count Four for possessing an open container with alcohol in the vehicle.

[8]A complete inventory of the weapons and ammunition is located at Gov. Ex. 34. It is noted by the court that the defendant does not challenge his guilt on the possession of a loaded weapon charge (Count Five). The court finds the evidence sufficient to support his conviction.

[9]Prior to trial, the United States moved to dismiss the possession of a controlled substance charge (Count Seven) premised on the drugs found in the car. The defendant had a prescription for the same. The motion was granted by the court and the charge was dismissed with prejudice.

4

been opened and had various portions remaining.  (See Gov. Ex. 23-23).

Dr. Jeff Kalim, a forensic toxicologist, testified concerning the various pills that were found in the car, including morphine sulfate and clonazepam.  (See Gov. Ex. 3, 8, 18 & 33).  He also testified concerning the increased impact on judgment, skill, balance, timing and spacial assessment when they are mixed with alcohol.

The defendant offered the testimony of long time friend Cullen Kehoe.  He testified that he had been with the defendant earlier that day, that he did not see him drinking and that he was aware of the fact that defendant had back surgery four days before the incident.  The defendant also offered the testimony of additional witnesses concerning his veracity and the fact that he did not have an alcohol problem.

The defendant testified that he had an outpatient cryo-procedure for his back the Thursday before his arrest in this case and that he used limited pain medication since then.[10]  He also denied drinking or having alcohol in the occupant portion of the car, including in the Styrofoam cup that was on the center console.  According to the defendant, the cup allegedly previously contained 7-up that his son was drinking.  (See Gov. Ex. 17).  The defendant stated that the vodka bottles that were in the trunk were placed there by him and were for his friend Cullen Kehoe.  According to the defendant, they were not opened at any time.  His only explanation for their various stages of consumption was that someone else, such as the tow truck operator, must have opened and consumed the same.

---

[10]The evidence also shows that the defendant has chronic back problems and that he consumed copious amounts of prescription drugs.  (Gov. Ex. 8, 33 & 35).

## DISCUSSION

### Refusal to Submit to a Test

The defendant's first challenge is to the second count of the information that alleges that he failed to submit to a breath test as required by law.  (Doc. 8).  He asserts that under "Alabama substantive law" he should not be held guilty of failing to take the portable test on the side of the road and for failing to take a second test after he registered a ".000".  (Doc. 8 at 6).  The United States responds that "Alabama law is not assimilated into this action."  (Doc. 9 at 1-3 (citing *United States v. Yates*, 211 Fed. Appx. 925 (11th Cir. 2006)).

The court agrees with the United States.  Section 4.23, concerning refusal to submit to testing, is controlling in this instance.  The situs of the offense, the Natchez Trace Parkway, is land within the "boundaries of federally owned lands ... administered by the National Park Service."  36 C.F.R. § 1.2(a)(1).  Accordingly § 4.23 is applicable and it is unnecessary to assimilate Alabama substantive law.

The next issue is whether either the failure to take the field test or to provide a second sample violates § 4.23(c)(1).  That section provides that a driver is to submit to certain specific tests in certain circumstances.  36 C.F.R. § 4.23(c)(1).  Section 4.23(c)(2) prohibits an individual from refusing to take the tests enumerated in (c)(1).

Concerning the first refusal – the field breath test – the court finds the evidence concerning the field test is insufficient to support a conviction in this case.  The regulation requires that the officer have probable cause to believe an offense has been committed at the time of the refusal.  36 C.F.R. § 4.23(c)(1).  In this instance, Ranger Franks did not have the requisite probable cause at the time of the refusal.  He had smelled alcohol on or about the person of the

6

defendant.  However, that is the extent of the evidence of probable cause at that moment.  Franks had not observed any erratic driving – the defendant was stopped only for speeding, the defendant's speech did not appear slurred, the defendant had not been given the field sobriety test, and nothing else affirmatively demonstrated the necessary probable cause.[11]

Concerning the second refusal – the second "blow" into the Alcotest 7110MKIII-C at the Florence Police Department – the court finds that it is sufficient to support a conviction.  The testimony from Florence Police Officer Mike South was clear and unequivocal that the defendant refused to "blow" a second time into the equipment.  (See Gov. Ex. 2).  He also testified that a second sample was necessary to achieve a complete test.[12]  Without the second sample, the equipment necessarily registers a ".000" as a default.

To the extent that the defendant argues that the issue is whether the correct procedure was followed under Alabama law (doc. 8 at 3), the court disagrees.  This is not an assimilative crimes situation.  The relevant issue is whether the defendant refused to submit to the test command of the officer.  The court finds that he did refuse.  Accordingly, the court further finds that the defendant is guilty of the offense charged in Count Two.

---

[11]Because the facts do not satisfy the regulation, the court pretermits any further discussion of this argument.

[12]As noted by the United States, the literature similarly suggests the requirement and significance of two measurements:

The Dräger Alcotest 7110 Evidential always requests two individual measurements, each with a separate breath sample.  The second breath sample is to be delivered by the subject two to five minutes after the first breath sample.  **Only if both individual results are successful and the results correspond within very close limits is the valid final result printed in a protocol by a printer**.

*Draeger, Measuring Alcohol in the Body, Evidential Breath-alcohol Analysis with the Alcotest® 7110 and Alcotest® 7110 Evidential* http://www.draeger.com/media/10/02/70/10027088/measuring_alcohol_in_the_body_br_9044525_en.pdf. (last accessed July 26, 2010) (emphasis added).

## Interference with Agency Functions

At trial, the United States noted that there were three different facts proven that demonstrate a violation of the regulation prohibiting a person from interfering with an agency function under 36 C.F.R. § 2.32(a)(3), as charged in Count Six of the information.[13]  (Doc. 9 at 11).  The three facts were when (1) the defendant claimed to be an active sheriff's deputy, (2) the defendant's denial that there was alcohol in his car, and (3) the defendant's claim that he was on the phone with his attorney who instructed him not to submit to the field breath test.  (*Id*.)  The defendant does not specifically challenge this aspect of the information.

In *United States v. Bucher*, 375 F.3d 929 (9th Cir. 2004), the court stated:

> To interpret a regulation, we look first to its plain language.  *United States v. Hagberg*, 207 F.3d 569, 574 (9th Cir. 2000) (citing *Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir. 1995)).  As with legislation, we presume the drafters said what they meant and meant what they said.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992).  If the regulation is unambiguous, its plain meaning controls unless such reading would lead to absurd results.  *Reno*, 45 F.3d at 1379.  The term "interfere" is unambiguous and is defined as "to oppose, intervene, hinder, or prevent." *Willfong*, 274 F.3d at 1301 (quoting WEBSTER'S NEW WORLD DICTIONARY 704 (3d College ed.1998)).  Similarly, "interference" means an "act of meddling in another's affairs ... [a]n obstruction or hindrance." Black's Law Dictionary, 818 (7th ed. 1999)....
>
> ....  When the regulation was enacted in 1983, the National Park Service stressed that § 2.32(a) "is necessary to ensure that government operations proceed without interference."  48 Fed. Reg. 30252, 30270 (June 30, 1983) (emphasis added).  Although it rejected more sweeping prohibitions that were proposed, the Service also commented, "the prohibitions in [§ 2.32] were narrowly drafted and intended to give the Service the authority it needs to ensure that government operations proceed without interference."  48 Fed. Reg. 30252, 30259 (June 30, 1983) (emphasis added).  The focus on government operations-as opposed to the employees themselves-reveals that the regulation's goal is to protect and enable

---

[13]The information incorrectly cites to 36 C.F.R. § 2.32(a)(4).  That is clearly a scrivener's error as the language in the charge tracks the language in § 2.32(a)(3).

government functions and to protect the employees who perform them.

*Bucher*, 375 F.3d at 932.

Premised on the circumstances adduced at trial, it is clear that the defendant is guilty of this offense under all three scenarios advanced by the United States.  All three were intended to "throw off" the investigation being conducted by Ranger Franks after he smelled alcohol.  All three were intended to influence the further conduct of Ranger Franks at that instance. Accordingly, any challenge to this charge on duplicity grounds is without merit.

### Improper Tag

The defendant next asserts that the improper tag violations under 36 C.F.R. § 4.2 are flawed if the court finds that the defendant "did pay the revenue department of the [S]tate of Tennessee monies for his tag and yet [sic] was in fact a proper Tennessee tag."  (Doc. 8 at 6).  In support of this contention, he cites ALABAMA CODE § 32-6-52, which deals with the classification of vehicles.  (*Id*.)  In his "Request that the Government's Response to 36 C.F.R. § 4.2 be Held for Naught" (doc. 10), the defendant attaches a letter from the prosecutor concerning a possible plea herein, the Assistant United States Attorney specified that citation 2133523 involved the charge of an improper tag under "36 C.F.R. § 4.2 (ALA. CODE § 32-6-52)" and that the prosecutor never amended such charge.  (Doc. 10 at 1 and Ex. 1 (doc. 10-1)).  Accordingly, he concludes that the prosecution should be bound by "its improper tag ticket and should not be allowed to amend" the same.  (*Id*.)

As best the court can discern, the defendant was initially charged, *inter alia*, with various

9

tickets, including an improper tag violation under "36 C.F.R. § 4.2 (Ala. Code § 32-6-52)."[14] (Doc. 10-1). By the time of the filing of the information by the United States Attorney, the charge had morphed into two violations involving the license under 36 C.F.R. § 4.2 – attaching and keeping the tag plainly visible (Ala. Code § 32-6-51) and altering or mutilating a license plate (Ala. Code § 40-12-265). There were no improper amendments under the circumstances. The United States was free to present whatever violations were observed by Ranger Franks. The defendant cites no authority to the contrary. Additionally, this more properly was a matter for a pretrial motion and pretrial consideration. The defendant's motion to dismiss (doc. 8) and his request that the violations be held for naught (doc. 10) are due to be denied.

To the extent that the defendant next asserts that Count Nine, dealing with altered or mutilated tags or plates deals, concerns "Alabama tags and not Tennessee tags" and is obviously "written for individuals with Alabama license plates and not a Tennessee license plate," the court disagrees. (Doc. 12 at ¶¶ 4 & 7). Section 40-12-265(a) states, in pertinent part, that it is unlawful "for any person to mutilate or alter, for the purpose of deception, any motor vehicle tag, plate, or validation stamp or to use upon any motor vehicle any tags, plates, or validation stamps in imitation of or substitution for authorized issued tags, plates, or validation stamps." Ala. Code § 40-12-265(a). The clear language and intent of the statute is unambiguous.[15] It is intended to prohibit a person from mutilating or altering a plate for the purpose of deception.

---

[14]Alabama Code § 32-6-52 makes it an offense "for any person to drive or operate any motor vehicle upon the streets or highways of this state, unless the license tag attached to the vehicle is of the proper classification as required by the revenue laws of this state...."

[15]As noted previously herein, if the statutory language "is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993); *see also Estate of Cowart v. Nichols Drilling Co.*, 505 U.S. 469, 475 (1992).

ALA. CODE § 40-12-265(a).  This finding is supported by the Alabama Administrative Code

which provides:

> (1) WHEREAS, **license plates serve as one of the primary methods of identifying vehicles and determining ownership by law enforcement officials**; and WHEREAS, Act 79-797, now codified as CODE OF ALA. 1975, § 32-6-64, **clearly shows legislative intent that Alabama license plates are to have the greatest visibility and legibility possible**; and WHEREAS, the Legislature has further shown its intent as demonstrated by Code of Ala. 1975, § 40-12-265, as amended, that mutilated or altered license plates are not to be displayed on any motor vehicle.  It is therefore ordered that the following be adapted under the authority of Code of Ala. 1975, § 40-2-11.

> (2) The terms **"mutilation" or "alteration"** as used in Code of Ala. 1975, § 40-12-265, **shall include, but shall not be limited to, the following: Any situation wherein an unauthorized type decal, sticker, patch or other device or impediment which would tend to block or obscure the license plate number or the revalidation decals or otherwise make the Alabama license plate or decal illegible**.

ALA. ADMIN. CODE § 810-5-1-.229(1)-(2) (bold added).

The tag on the defendant's car was clearly obscured, blocked and hidden in part by the

"Fraternal Order of Police" insignias covering almost one-third of the tag.  It is worth noting that

when Ranger Franks stopped the defendant's vehicle and attempted to "run" the tag he had

difficulty providing the dispatcher with a complete tag number due to the insignias on the tag.

(Gov. Ex. 1 (Digital video and audio of the stop) & 20 (Photograph of the tag)).  This is exactly

what the law seeks to prevent.

To the extent the defendant argues that the statute is not applicable to him because he is a

resident of Tennessee, the court again finds that argument to be without merit.  Nothing in the

statute itself suggests that it is limited to Alabama residents.  *See* ALA. CODE § 40-12-265(a).  A

review of the entire "General Provisions" (Division 1) of the Article on "Motor Vehicles"

demonstrates the contrary.  ALA. CODE § 40-12-240 to 274.  The Article only excludes certain

provisions and vehicles from regulation (ALA. CODE § 40-12-262(a)), but not a passenger vehicle

such as the defendant's BMW (ALA. CODE § 40-12-265(a)).  Accordingly, without authority to

the contrary, the court finds this assertion to be flawed.

The court further finds the defendant guilty on each of the offenses in Counts Eight and

Nine.

### Driving Under the Influence and Presence in the Park Under the Influence

The last matter is whether the prosecution has demonstrated the defendant's guilt on the

driving under the influence offense charged in Count One and the presence in the park under the

influence offense charged in Count Ten.  Although the court harbors concerns over the

defendant's condition on the evening in question, particularly in view of the drugs and alcohol

found in the vehicle, the undersigned cannot conclude beyond a reasonable doubt that he was

operating his vehicle under the influence of alcohol or drugs or some combination thereof in

violation of federal law.  Similarly, the court cannot conclude beyond a reasonable doubt that he

was present in the park while under the influence of alcohol or a controlled substance to a degree

that endangered himself or another person in violation of federal law.

### CONCLUSION

Premised on the foregoing, the court finds that the defendant's challenges to Count Two

(refusal to submit to a test) and to any improper tag charge (doc. 8) and his motion to dismiss

Count Nine (doc. 12) are due to be denied.

As to the ultimate merits of the remaining charges in the information, the court finds the

defendant guilty on Counts Two, Three, Four, Five, Six, Eight and Nine.  The court finds the

defendant not guilty on Counts One and Ten.[16]  A separate order will be entered.

      **DONE**, this 27th day of July, 2010.

                                        *John E. Ott*
                                        JOHN E. OTT
                                        United States Magistrate Judge

---

[16]As noted above, Count Seven, possession of a controlled substance, was dismissed previously.