FILED
2012 Sep-27  AM 11:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | **3:10-CR-169-AKK-JEO** |
| **ROBERT O. HYDE, JR.,** | ) | |
| | ) | |
| Defendant-Appellant**.** | ) | |

## MEMORANDUM OPINION AND ORDER

After a one day trial, the magistrate court convicted Appellant Robert O.
Hyde, Jr. of seven of the ten counts filed against him.  Hyde appeals his conviction
and sentence on several grounds.  For the reasons stated below, the court affirms
the magistrate court.

## I.  FACTUAL AND PROCEDURAL HISTORY

On January 18, 2010 at 6:20 p.m., United States Park Service Ranger
Anthony Franks stopped Defendant-Appellant Robert O. Hyde for traveling at a
speed of 73 miles per hour in a 50 mile per hour zone on the Natchez Trace
Parkway in Colbert County, Alabama.  Doc. 14, at 2-3.  Before exiting his patrol
car, Franks attempted to call in Hyde's license plate number to the dispatcher.  *Id.*
at 3.  However, Franks could not obtain any information from the dispatcher

because Franks described the license plate as a "Fraternal Order of Police"

("FOP") plate.  *Id.* at 13.  Although the license plate contained an FOP decal and

Hyde allegedly represented the plate as an FOP plate, doc. 32, at 93; Gov't Trial

Ex. 1; *see also* doc. 32, at 45, both turned out false.  In any event, perhaps because

of the delay,  Hyde exited his vehicle and approached Franks's patrol car.  Doc. 32

at 8.  Franks directed Hyde to wait at the rear of Hyde's vehicle until Franks

finished with the dispatcher.  *Id.*

Eventually, Franks discontinued his attempt to call in the license plate.  *Id.*

Franks then approached Hyde and asked for Hyde's driver's license.  *Id.*  Hyde

complied and produced a Tennessee driver's license from what Franks believed

appeared to be a police credentials case.  *Id.* at 58.  The case also contained a

Shelby County, Tennessee Deputy Sheriff's badge and a Shelby County,

Tennessee "special deputy" card.  *Id.* at 58, 89-90; Gov't Trial Exs. 5, 6, 11.  As a

result, Franks asked Hyde if Hyde worked for the Shelby County Sheriff's

Department ("Sheriff's Department").  Doc. 32, at 58; Gov't Trial Ex. 1.

Allegedly, Hyde answered affirmatively and indicated that he served as an "active

officer."  *Id.*  Hyde disputed this point at trial and contended that he intended only

to relay that he was a "special deputy" with the Sheriff's Department.  Doc. 32, at

255.  Regardless, at trial, Sergeant Dallas Drews of the Sheriff's Department

testified that Hyde was neither an "active officer" nor a "special deputy" and that Hyde's "special deputy" card expired 20 years early, on August 31, 1990. *Id.* at 157-58, 160.

During the exchange between Franks and Hyde about Hyde's driver's license and affiliation with the Sheriff's Department, Franks "smelled alcohol on [Hyde]." *Id.* at 9. When Franks questioned Hyde about the smell, Hyde denied drinking. *Id.* at 253; Gov't Trial Ex. 1. Franks asked Hyde to take a breathalyser test, and Hyde initially agreed . Doc. 32*,* at 58. Consequently, Franks told Hyde to remain at the rear of Hyde's vehicle while Franks retrieved the breathalyser test. *Id.* at 59. Despite Franks's instructions, Hyde moved to the passenger side of the vehicle and called a friend, Cullen Kehoe ("Kehoe"), to arrange for Kehoe to pick up Hyde's son, who was a passenger in Hyde's vehicle. *Id.* at 225. When Franks returned to the vehicle, Hyde informed Franks that he had talked to an attorney and that the attorney instructed Hyde against taking a breathalyser test. *Id.* at 274-276.

Because Hyde refused the breathalyser test, Franks initiated three field sobriety tests: (1) the walk and turn, (2) the finger to nose, and (3) the one leg stand. *Id.* Hyde failed all three. *Id.* As a result, despite Hyde's contentions to the contrary, Franks arrested Hyde for driving under the influence of alcohol. *Id.* at

13, 61-67, 86.

After the arrest, Franks claims that he noticed that a white styrofoam cup in the vehicle "smelled of alcohol." *Id.* at 68-69.   Hyde, however, maintained that the styrofoam cup contained a soft drink and ice, *id.* at 262, and told Franks that the vehicle contained no alcohol,  *id* at 277.  Interestingly, Hyde's son purportedly indicated that he emptied the contents of the cup onto the ground during the stop – which, of course, begs the question about why he felt the need to do so.  In any event, Hyde admitted later that he lied when he told Franks that the car did not contain any alcohol.  *Id.* at 265-266.   Indeed, after the arrest, Franks found alcohol in the trunk when Franks and Colbert County Officer Michael Kumse ("Kumse"), who arrived at the scene prior to Hyde's arrest, searched the vehicle.  *Id.* at 16, 191.  Franks and Kumse also found several weapons, including a loaded handgun under the driver's seat, another loaded handgun in the trunk, and several other firearms in the trunk.  *Id.* at 191.

At some point, Franks contacted Ron Terry ("Terry") of Terry's Wrecker Service, who later arrived at the scene and towed Hyde's vehicle to an overnight storage garage.  *Id.* at 20, 105.  Terry testified that the smell of alcohol "was there," when he approached Hyde to get the keys to the vehicle.  *Id.* at 104.  Sometime after Terry towed Hyde's vehicle, Franks transported Hyde to the

Florence Police Department ("FPD"), where Hyde remained until Kehoe bailed him out the next morning.  *Id.* at 225.  At the FPD, Officer Michael South ("South") attempted to conduct a Drägar test to determine Hyde's blood alcohol content.  *Id.* at 179.  Before doing so, South informed Hyde of the implied consent standards and rules for administering the test, which stated that the test required "two good breath samples" in order to obtain accurate results.  *Id.* at 181-182. Despite these instructions, Hyde refused to provide a second sample.  *Id.* at 259. Consequently, the certificate of breath alcohol analysis read, "Subject refused, test aborted."  *Id.* at 180.

The following morning, Franks visited Terry's garage to inventory Hyde's vehicle.  *Id.* at 23.  Franks found an additional weapon, empty alcohol containers, a badge, a badge holder, an empty flask, and silver containers of prescription drugs.  *Id.* at 55-56, 191-98.  During the inventory search, Franks took apart Hyde's license plate and determined that it was not an FOP plate.  Rather, Franks observed the following: (1) a Tennessee license plate number of "TG 1368;" (2) a University of Memphis license plate with a Memphis Tigers insignia; (3) a bracket around the license plate with the words "Associate Member" on the top and "Fraternal Order of Police" on the bottom; (4) a gold placard consisting of the words, "FOP, Associate Member, Fraternal Order of Police," which covered the

Memphis Tigers insignia, the letter "G," and portions of the letter "T" of the license plate number; (5) the printed words, "Fraternal Order of Police Memphis State Trooper Lodge No. 35," taped over the words, "University of Memphis" at the bottom of the license plate; and (6) a clear piece of plastic covering the entire license plate. *Id.* at 90-93; Gov't Trial Ex. 4, 29, 30, 31.

As a result of the traffic stop, the Government filed a ten count information against Hyde. Count One charged Hyde with driving under the influence; Count Two, refusal to submit to test; Count Three, speeding; Count Four, open container of alcohol; Count Five, possession of a loaded weapon; Count Six, interfering with agency functions–false information; Count Seven, possession of a controlled substance; Count Eight, improper tag; Count Nine, altered tag; and Count Ten, presence in park area when under the influence of alcohol or controlled substance.

At trial, Hyde denied drinking and testified that he underwent an "outpatient cryo-procedure" on the Thursday prior to his arrest, i.e. January 14, 2010, and offered that a back condition related to the procedure prevented him from successfully completing certain movements required by the field sobriety tests. *Id.* at 250-253. Moreover, Kehoe and Keith Stevenson ("Stevenson"), another friend, each testified that they spent time with Hyde earlier on the day of the arrest and never saw Hyde consume any alcohol. *Id.* at 209, 219. Kehoe also testified that

he spoke with Hyde extensively at the scene when he arrived to pick up Hyde's son and that Hyde did not seem impaired.  *Id.* at 225.

After a one day bench trial, the magistrate court found Hyde guilty on Count Two (refusal to submit to test to determine blood alcohol content), Count Three (speeding), Count Four (open container of alcohol), Count Five (possession of a loaded weapon), Count Six (interfering with agency functions-false information), Count Eight (improper license/tag), and Count Nine (altered tag).  Doc. 14, at 13.  The magistrate court found Hyde not guilty as to Count One (driving under the influence) and Count Ten (presence in park area while under influence of alcohol or controlled substance), *id.*, and dismissed Count Seven (possession of a controlled substance) with prejudice, *id.* at 4 n. 9.  The magistrate court sentenced Hyde to forty-eight hours in jail and two years probation separately for each of the seven guilty counts, to run concurrently. The magistrate court also ordered Hyde to undergo alcohol and drug screening, testing, and counseling, and to perform two-hundred  hours of community service.  Finally, the magistrate court fined Hyde $1,600.  Doc. 17.

## II. STANDARD OF REVIEW

Hyde is appealing his conviction and sentence and contends that the magistrate court erred in its findings.  A district court reviewing a magistrate

court's decision sits as an appellate court.  28 U.S.C. § 636(c)(3); 18 U.S.C. § 3742(h).

## A.    Evidentiary Errors

"Evidentiary errors that are not specifically objected to at trial are reviewed for plain error." *United States v. Williford,* 764 F.2d 1493, 1502 (11th Cir. 1985) (citing *United States v. Gonzales*, 661 F.2d 488, 493 (5th Cir. 1981)).  A district court corrects only for errors that are particularly egregious.  *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 (1982)).  For a district court to find plain error, (1) an error must exist, (2) the error must be plain, and (3) the error must affect substantial rights.  *See United States v. Olano*, 507 U.S. 725, 732-34 (1993).

## B.    Sufficiency of the Evidence

"In reviewing the sufficiency of the evidence in support of a conviction in a criminal case following a non-jury trial, [a district court] must determine whether the evidence, construed in the light most favorable to the government, would permit the trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005) (quoting *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989).  A district court "must sustain the verdict 'where there is a reasonable basis in the record for' it." *Id.* at

1270-71 (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1010

(11th Cir. 2004).

## C.   Sentence

A district court reviews a sentence of a magistrate court "as though the

appeal were to a court of appeals from a sentence imposed by a district court."  18

U.S.C. § 3742(h).  "[I]n performing this review, [a court] must measure

'reasonableness' against the factors outlined by Congress in 18 U.S.C. § 3553(a)."

*United States v. Pugh*, 515 F.3d 1179, 1188 (11th Cir. 2008).  "[T]he party who

challenges the sentence bears the burden of establishing that the sentence is

unreasonable in the light of both th[e] record and the factors in section 3553(a)."

*United States v. Thomas*, 446 F.3d 1348, 1351 (11th Cir. 2006) (quoting *United

States v. Talley*, 431 F.3d 784, 788 (11th Cir.2005)).

### III. HYDE'S CONVICTIONS AND APPLICABLE LAW

Hyde seeks reversal of his convictions as to Count Two (refusal to submit to

test to determine blood alcohol content), Count Four (open container of alcohol),

Count Five (possession of a loaded weapon), Count Six (interfering with agency

functions- false information), Count Eight (improper license/tag), and Count Nine

(altered tag).  *See* doc. 37.1.  Specifically, Hyde is arguing that the evidence is not

sufficient for his conviction under Counts Two, Four, Six, Eight and Nine, and

that the magistrate court erred in admitting certain evidence relating to Count Five.

Alternatively, if the court affirms his conviction, Hyde seeks to reduce his

sentence to time served, to alleviate the two year probationary period, and to waive

his remaining fines.

**A.      Refusal to Submit to Blood Alcohol Test Under 36 C.F.R. § 4.23(c).**

Hyde argues that the evidence is insufficient to support his conviction of

Count Two–i.e., failing to submit to a test to determine blood alcohol content

under 36 C.F.R. § 4.23(c).  Doc. 14, at 13.   An operator of a motor vehicle, shall,

> [a]t the request or direction of an authorized person who has
> probable cause to believe that an operator of a motor vehicle
> within a park area has violated a provision of paragraph (a) of
> this section, the operator shall submit to one or more tests of
> the blood, breath, saliva or urine for the purpose of determining
> blood alcohol and drug content.

36 C.F.R. § 4.23(c)(1).  Moreover, "[r]efusal by an operator to submit to a test is

prohibited."  36 C.F.R. § 4.23(c)(2).  Additionally, "[a]ny test or tests for the

presence of alcohol and drugs shall be determined by and administered at the

direction of an authorized person."  36 C.F.R. § 4.23(c)(3).  The term "authorized

person" refers to "an employee or agent of the National Park Service with

delegated authority to enforce the provisions of this chapter."  36 C.F.R. § 1.4(a).

Hyde argues that his conviction for refusing to submit to a test under 36

C.F.R. § 4.23(c) is erroneous for two reasons.  First, Hyde argues that no evidence

exists establishing that South or Franks are "authorized persons" under by 36

C.F.R. § 4.23(c).   The court finds that there is sufficient evidence to establish that

South and Franks are "authorized persons" under the statute.  Specifically, video

evidence of the stop provided audio of Franks stating, "I'm United States Park

Ranger Anthony Franks."  Gov't Trial Ex. 1.   Moreover, Hyde himself introduced

the Natchez Park Services Vehicle Impoundment and Inventory Policy into

evidence and relied on Franks's position as a Natchez Park Service Ranger to

authenticate the impoundment policy Franks followed during the stop.  Doc. 32, at

18; Gov't Trial Ex. 32.  In short, there is no doubt that Franks is an "authorized

person," i.e., "an employee or agent of the National Park Service with delegated

authority to enforce the provisions of this chapter."  36 C.F.R. § 1.4(a).  Likewise,

the evidence is unrefuted that South worked in the FPD on January 18, 2010, and

that he administered the Dräger test "to determine blood alcohol content," after

being dispatched to the police station for that purpose at Frank's request.  Doc. 32,

at 179.  Critically, South administered the test at Franks' direction and in the

presence of Franks.  *Id*. at 184.  Moreover, the evidence establishes that South

possessed sufficient knowledge and training on the proper use of the Dräger test.

Id. at 180-181.  Therefore, the court finds that the evidence sufficiently establishes

that South is an "authorized person" under 36 C.F.R. § 4.23(c) because for the

testing here, he acted as an agent of a Park Service Ranger.

Second, regarding the Drägar test, Hyde argues that he complied with 36

C.F.R. § 4.23(c) by providing one breath sample at the FPD, and did not know that

failing to provide a second breath sample constituted a refusal to comply.  The

Information charged that Hyde "knowingly and unlawfully refuse[d] to submit to

tests to determine blood alcohol content."  Doc. 1, at 2.  Hyde does not contest that

he knowingly refused the breathalyzer test during the stop.  Instead, he challenges

the conviction for refusing the Drägar test and argues that he did not *knowingly*

refuse the test since he thought he adequately complied by providing the first

breath sample.  Doc. 32, at 258-259.  The court disagrees.   South testified that he

read the implied consent standards and rules of the test to Hyde, and Hyde does

not contest this point.  *Id.* at 258-259.  Hyde instead contends that he "does not

remember" whether South stated that the test would require two breath samples.

*Id.* at 259.  South, on the other hand, testified that he specifically informed Hyde

that the test required Hyde to breathe into the instrument twice, or else the test

results in a "refusal."  *Id.* at 181.  South also testified that although he explained to

Hyde the necessity of a second breath, Hyde stated that "he wasn't going to blow

again."  *Id.* at 185.  This evidence is sufficient for the magistrate court to find that

Hyde knowingly refused to submit to the test.  Therefore, the magistrate court did not err in convicting Hyde of violating 36 C.F.R. § 4.23(c), and the conviction is affirmed.

## B.     Possession of an Open Container in Violation of 36 C.F.R. § 4.14(b)

Hyde challenges next the sufficiency of the evidence for his conviction under Count Four for possessing an open container in violation of 36 C.F.R. § 4.14(b).  Federal law prohibits the "[c]arrying or storing a bottle, can or other receptacle containing an alcoholic beverage that is open, or has been opened, or whose seal is broken or the contents of which have been partially removed, within a motor vehicle in a park area."  36 C.F.R. § 4.14(b).  It is undisputed that the stop occurred on the Natchez Trace Parkway, i.e., within the "boundaries of federally owned lands . . . administered by the National Park Service."  36 C.F.R. § 1.2(a)(1); *see* doc. 14, at 3, 12-13.  Thus, at the time of his arrest,  Hyde traveled in a park area governed by 36 C.F.R. § 4.14(b).  Moreover, the magistrate court had sufficient evidence to convict Hyde under 36 C.F.R. § 4.14(b).  Specifically, at trial, Franks testified that he saw a styrofoam cup in the front compartment of Hyde's vehicle, which Franks believed contained alcohol.  Doc. 32, at 13. Franks testified further that Hyde's son stated that he emptied the cup during the stop. *Id.* at 17, 68.  Finally, Franks testified that the cup "still smelled of alcohol."  *Id.* The

court finds that this evidence constitutes a "reasonable basis in the record" to determine that Hyde possessed an open container in his vehicle at the time of the stop. *See Brown*, 415 F.3d at 1270-1271. Therefore, Hyde's conviction under Count Four is affirmed.

### C.   Suppression of Evidence of Possession of a Loaded Weapon in Violation of 36 C.F.R. 2.4(b)

As it relates to his conviction for possessing a loaded weapon under 36 C.F.R. § 2.4(b) (Count Five), Hyde argues that Franks discovered the loaded handgun as a result of an unconstitutional search, and that the magistrate court should have suppressed the gun evidence under the exclusionary rule. Because Hyde failed to timely object to the admissibility of the loaded handgun at trial, this court reviews for plain error. *See Williford*, 764 F.2d at 1502.

The suppression argument fails for two reasons. First, Franks found the loaded handgun pursuant to a constitutional search of Hyde's vehicle. Under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), police officers can "search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723. The magistrate court had sufficient evidence to conclude that Franks reasonably believed that Hyde's vehicle contained evidence of the offense of arrest, i.e.,

driving under the influence of alcohol.  The evidence included: (1) the alleged

smell of alcohol on Hyde's breath, doc. 32, at 59; (2) Hyde's failing of three field

sobriety tests, *id.* at 59-67; and (3) the alleged smell of alcohol inside the styrofoam

cup, *id.* at 69.  This evidence was sufficient for Franks to have a reasonable

suspicion to search Hyde's vehicle for evidence of the offense and to make the

search constitutional under *Gant*.

Alternatively, the gun is also admissible because Franks would have

discovered it inevitably pursuant to a valid inventory search.  The inevitable

discovery doctrine "refers to discovery that did occur or that would have occurred

(1) despite (not simply *in the absence of*) the unlawful behavior and (2)

*independently* of that unlawful behavior."  *Hudson v. Michigan*, 547 U.S. 586, 616

(2006) (emphasis in original).  The government must show that the same evidence

"inevitably would have been discovered by lawful means."  *Id.*

Here, Franks arrested Hyde during the course of the stop and therefore

needed to impound Hyde's vehicle to remove it from the scene.  The record reflects

that Franks conducted a valid inventory search of the vehicle the next morning

pursuant to the Natchez Park Service Vehicle Impoundment and Inventory Policy.

Doc. 32, at 18; Gov't Trial Ex. 32.  The policy provides that "[a]n inventory will be

made as soon as safely possible."  Gov't Trial Ex. 32.  The policy allows flexibility

in conducting an inventory of a vehicle recognizing that "[i]n some circumstances, it may not be feasible to perform a vehicle inventory on the scene.  If that is the case, the vehicle will be locked and inventoried as soon as time permits." *Id.* Consistent with this policy, Franks conducted a valid inventory search the morning after Hyde's arrest and found additional firearms and alcohol.  In other words, Franks would have inevitably discovered the loaded handgun during the inventory search, making the loaded handgun admissible under the inevitable discovery doctrine. *See Hudson*, 547 U.S. at 616.   Accordingly, the magistrate court committed no error when he admitted the evidence of the loaded gun.

**D.    Knowingly Giving False Statements in Violation of 36 C.F.R.  § 2.32 (a)(3)**

As to Count Six, Hyde argues that the evidence is insufficient to support his conviction for violating 36 C.F.R. § 2.32(a)(3).  A violation of 36 C.F.R. § 2.32(a)(3) exists when a person "[k]nowingly giv[es] a false or fictitious report or other false information . . . [t]o an authorized person investigating . . . [a] violation of law." 36 C.F.R. § 2.32 (a)(3).  Hyde's argument rests on three premises, all of which fail as a matter of law.  First, Hyde again argues that Franks is not an "authorized person" under the statute.  However, sufficient evidence exists in the record to reject this argument.  *See supra* section A.

Second, Hyde argues that Count Six is duplicitous.  "A duplicitous indictment

charges two or more separate and distinct crimes in a single count." *United States v.*

*Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989) (citations omitted).  However, when a

statute "prescribes several alternative ways in which the statute may be violated and

each is subject to the same punishment . . . the indictment may charge any or all of

the acts conjunctively, in a single count, as constituting the same offense." *Id.*

Here, Count Six charged Hyde with violating one of the four prohibited types of

conduct under 36 C.F.R. § 2.32(a) (interfering with agency function by giving false

information).  To support this conviction, the Government provided three instances

in which Hyde knowingly made false statement to Franks: (1) Hyde stated he was an

"active officer" with Shelby County, doc. 32, at 58; (2) Hyde stated he had no

alcohol in his vehicle at the time of his arrest, doc. 32 at 192; and (3) Hyde stated

that he was on the telephone with an attorney when he was actually on the phone

with Kehoe, doc. 32, at 274-76. Rather than charging more than one crime in one

count as Hyde contends, the government simply supported Count Six with three

instances in which Hyde made false statements to Franks. Therefore, Count Six is

not duplicitous.

Third, Hyde makes specific arguments concerning each of these statements.

Concerning the first that he represented that he was an "active officer" for Shelby

County, Tennessee, Hyde argues that this statement did not mislead Franks, and

thus does not violate 36 C.F.R. § 2.32(a)(3).  However, the statute does not require that the Government prove that the false statement misled the officer.  *See* 36 C.F.R. § 2.32(a)(3).  Rather, it requires only that an individual "[k]nowingly giv[e] a false or fictitious report or other false information . . . [t]o an authorized person investigating . . . [a] violation of law," which is precisely what Hyde did when he falsely represented himself as an "active officer."  As to the second instance, when Hyde stated that his vehicle did not contain any alcohol,  Hyde argues that he made the statement while in custody rather than during an investigation by an authorized person, and that the statute therefore does not apply.  Doc. 39, at 7-8.  This argument fails because the record establishes that Hyde made the statement *before* Franks placed Hyde under arrest.  Gov't Trial Ex. 1.  Finally, Hyde argues that his statement identifying Kehoe as his lawyer was immaterial to Franks's investigation and therefore not a violation under 36 C.F.R. § 2.32(a)(3).  However, there is no language in 36 C.F.R. § 2.32(a)(3) that requires materiality to obtain a conviction for a false statement.  *See* 36 C.F.R.  § 2.32(a)(3).  Given that Hyde does not dispute that he falsely stated that he was on the telephone with his attorney, doc. 32, at 97, 273, therefore, Hyde knowingly gave false information in violation of federal law. For all these reasons, sufficient evidence exists to support Hyde's conviction under 36 C.F.R. § 2.32(a)(3).  Count Six is affirmed.

E.     **Improper Tag and Altered Tag  under 36 C.F.R. § 4.2.  and Alabama Code §§ 32-6-51, 40-12-265(a)**

Hyde also challenges his conviction under Count Eight (improper tag) and Count Nine (altered tag).   Under 36 C.F.R. § 4.2(a), "traffic and the use of vehicles within a park area are governed by State law."  36 C.F.R. § 4.2(a).  With respect to Count Eight, the applicable state statute, Alabama Code § 32-6-51, requires all motor vehicles operated within the state of Alabama to "keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate."  Hyde argues "there was no evidence offered at trial that the numbers on Hyde's tag were not visible."  Doc. 39, at 9.  However, the record establishes that Hyde "insisted" he had an FOP license plate, when in fact he did not.  Doc. 32, at 93.  Further, the record shows the FOP insignia obstructed portions of the license plate number by covering the letter "G" and portions of the letter "T."  Doc. 32, at 92.  These obstructions prevented Franks from seeing portions of Hyde's license plate, or obtaining Hyde's registration information the night of the stop.  Thus, sufficient evidence exists to support a conviction under Count Eight for an improper tag under 36 C.F.R. § 4.2 and Alabama Code § 32-6-51 because Hyde did not have a "plainly visible" license plate at the time of the stop.  Hyde's conviction for Count Eight is

therefore affirmed.

Similarly, Hyde argues that the court should overturn his conviction for Count Nine (altered tag) in violation of 36 C.F.R. § 4.2 and Alabama Code § 40-12-265(a) "because he did not 'mutilate or alter' his license plate 'for the purpose of deception.'" Doc. 39, at 9.  Under Alabama Code  § 40-12-265(a), '[i]t shall be unlawful for any person to mutilate or alter, for the purpose of deception, any motor vehicle tag [or] plate . . . or to use upon any motor vehicle any tags [or] plates . . . in imitation of or substitution for authorized issued tags, plates, or validation stamps." The record shows that Hyde falsely identified his license plate as an FOP plate. Doc. 32, at 93.  Further, the placement of the FOP insignia deceived Franks.  *Id.* Moreover, Franks could not obtain Hyde's registration information because Hyde led Franks to believe that Hyde carried an FOP license plate on his vehicle.  *Id.* Thus, sufficient evidence exists to support a conviction under 36 C.F.R. 4.2 and Alabama Code § 40-12-265(a).  Hyde's conviction as to Count Nine is affirmed.

**F.    Sentence**

Finally, Hyde argues that his sentence is unreasonable. The magistrate court sentenced Hyde to forty-eight hours in jail and two years probation to run concurrently.  Additionally, the magistrate court fined Hyde $1,600 and ordered Hyde to perform two hundred hours of community service and undergo alcohol and

drug screening, testing, and counseling.  Doc. 17.  The court reviews the sentence

for both procedural and substantive reasonableness.  *See Gall v. United States*, 552

U.S. 38, 51 (2007).

Hyde argues that the magistrate court failed to adequately consider the

sentencing factors identified in 18 U.S.C. § 3553, which require the court (1) to

consider "the nature and circumstances of the offense and the history and

characteristics of the defendant" and "the need for the sentence imposed;" (2) issue

a sentence that "reflect[s] the seriousness of the offense, [] promote respect for the

law, and [] provide just punishment for the offense;" (3) "afford adequate deterrence

to criminal conduct," and "protect the public from further crimes of the defendant;

and (4) "provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner."  18

U.S.C. § 3553(a)(1) & (2).

Contrary to Hyde's contentions, the magistrate court adequately considered

these sentencing factors.  Specifically, the magistrate court referred to Hyde's

"evasiveness in th[e] courtroom" as well as the existing evidence of the false

statements Hyde made to Franks during the stop.  *See* Sent. Tr. 32; 18 U.S.C. §

3553(a)(2)(A).  The magistrate court further stated that the sentence is fair "in light

of the great risk [Hyde] put his son, himself, and the officer that night based upon

his conduct." Sent. Tr. 32; *see* 18 U.S.C. § 3553(a)(2)(B) & (C).  Furthermore, the

sentence required Hyde to undergo alcohol and drug screening, testing, and

counseling, thus providing correctional treatment for Hyde.  *See* 18 U.S.C. §

3553(a)(2)(D).  Finally, the court notes that the magistrate court imposed only forty-

eight hours of jail time even though each offense carried a maximum term of six

months.  Likewise, although each offense carried a maximum fine of $5,000, the

magistrate court only imposed a fine of $1,600 for all seven of the guilty

convictions combined, and although each guilty conviction carried a potential

probationary period of up to five years, the magistrate court imposed only two years

of probation to run concurrently for each offense.  Each sentence the magistrate

court imposed fell well below the statutory maximums for the seven guilty counts.

Needless to say, these facts belie Hyde's contention that the magistrate court failed

to consider the 18 U.S.C. § 3553 sentencing. In short,  Hyde's sentence is both

procedurally and substantively reasonable and Hyde's sentence is due to be

affirmed.

Done the 27th day of September, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE